**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LISA BIRCHMORE,**

                                    **Plaintiff,**

          **v.**

**GRANVILLE CENTRAL**
**SCHOOL DISTRICT,**

                                    **Defendant.**
_____

**1:18-cv-1456**
**(GLS/CFH)**

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Law Offices of Susan Edwards          SUE EDWARDS, ESQ.
1169 Betts Bridge Road
West Pawlet, VT 05775

**FOR THE DEFENDANT:**
Girvin & Ferlazzo, P.C.                SCOTT P. QUESNEL, ESQ.
20 Corporate Woods Boulevard           ALEXANDER SCOTT DAHLE,
Albany, NY 12211-2350                  ESQ.

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Lisa Birchmore brings this action against defendant Granville

Central School District (hereinafter "the District") pursuant to Title VII[1] and

the Equal Pay Act (EPA).[2]   Pending is the District's motion for summary

judgment.  (Dkt. No 28.)  Also pending is the District's motion to strike,

(Dkt. No. 34), as well as a letter motion requesting consideration of the

District's reply memorandum of law, (Dkt. No. 37).  For the reasons stated

below, the District's motion for summary judgment is granted, and its

motion to strike and letter motion are denied as moot.

## II.  Background

### A.   Facts[3]

As an initial matter, the Court notes that Birchmore admitted a

number of facts, but attempted to add additional facts to those admissions.

(Dkt. No. 31, Attach. 1 ¶¶ 60, 100, 101-02, 108.)  To the extent that

Birchmore has added additional facts, because those facts have not been

---

[1]  *See* 42 U.S.C. §§ 2000e-2000e-17.

[2]  *See* 29 U.S.C. § 206(d).

[3]  Unless otherwise noted, the facts are undisputed.  Notably, Birchmore responds to several of the District's statements of material facts by saying that she "lacks knowledge to admit or deny," "has no basis on which to admit or deny," or "is without the basis to admit or deny."  (Dkt. No. 31, Attach. 1 ¶¶ 5, 27, 29, 32, 37, 54-57, 62-63, 92-96, 106, 115, 119, 124, 133-34, 136, 140-41.)  These responses are deemed admissions.  *See* N.D.N.Y. L.R. 7.1(a)(3); *Lichtman v. Chase Bank, USA*, No. 18-CV-10960, 2020 WL 1989486, at *1 n. 1 (S.D.N.Y. Apr. 27, 2020); *Prudential Ins. Co. of Am. v. Govel*, No. 1:16-CV-0297, 2017 WL 2455106 at *1 n. 1 (N.D.N.Y. June 6, 2017).

submitted through the procedure outlined by the Local Rules, they will not be considered.  *See* N.D.N.Y. L.R. 7.1(a)(3) (2020) ("The non-movant's response shall . . . admit[ ] and/or deny[ ] each of the movant's assertions . . . in matching numbered paragraphs. . . . The non-movant's response may also set forth a short and concise statement of any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs."); *Lomonoco v. Saint Anne Inst*., No. 1:15-CV-1163, 2018 WL 2324051, at *1 (N.D.N.Y. May 22, 2018).

Additionally, some of Birchmore's purported denials are merely disagreements with the District's language or recitations of other facts. (Dkt. No. 31, Attach. 1 ¶¶ 61, 88-89, 110, 120, 122 (noting that a witness has "state[d a specific fact] in the affidavit that [the witness] prepared to support [the District's] position").)  These paragraphs do not actually challenge the factual substance described in the relevant paragraphs in the District's statement of material facts, and thus, the court will not consider them as demonstrating disputed facts.  *See Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) ("Many of Plaintiff's purported denials—and a number of his admissions—improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often

3

speaking past Defendants' asserted facts without specifically controverting those same facts." (citations omitted)).

###### 1.   *Birchmore's Background*

Birchmore holds Bachelor's and Master's Degrees in Materials Engineering.  (Def.'s Statement of Material Facts (SMF) ¶ 19, Dkt. No. 28, Attach. 2.)  She began working in the field of education in the fall of 2002. (*Id.* ¶ 25.)  Prior to that, she worked in a range of engineering jobs.  (*Id.* ¶¶ 20-24.)

In the spring of 2003, Birchmore began student teaching at a school in Vermont, where she was a substitute teacher in May and June of that year.  (*Id.* ¶¶ 30, 33.)  In October, Birchmore contacted the District to express an interest in a then-vacant secondary math teacher position.  (*Id.* ¶ 37.)  Shortly thereafter, the District's Board of Education (hereinafter "the Board") "voted to offer [Birchmore] a non-tenure long term substitute teacher position in the [m]ath tenure area beginning on October 1, 2003, and ending on August 31, 2004."  (*Id.* ¶ 38.)  Birchmore "was offered and accepted the position at BA Step 1, which paid her $32,015, pro-rated for the remainder of the 2003-2004 school year."  (*Id.* ¶ 39.)

In the fall of 2004, Birchmore began working as a technology

education teacher at another school located in Vermont.  (*Id.* ¶ 44.)  She did not apply for any vacant teaching positions at the District between April 2006 and the summer of 2014.  (Def.'s SMF ¶ 50.)

  2.  *The District's Hiring of Birchmore*

At the beginning of October 2014, Daniel Brayton, an eighth grade technology teacher at the District, resigned.  (*Id.* ¶ 51.)  Brayton was hired by the District in 2008, and had a Bachelor's degree and one year of teaching experience at the time.  (*Id.* ¶ 91.)  He was offered, and accepted, the position at BA Step 2, with a starting salary of $33,464.  (*Id.* ¶ 92.)  His position was previously held by Christopher Spooner, who had been hired at BA Step 1 because of his Bachelor's degree and no prior teaching experience.  (*Id.* ¶¶ 94-96.)

Birchmore applied for the position, and met with Mark Bessen, then-Superintendent of Schools for the District, to discuss compensation.  (*Id.* ¶¶ 57, 63, 65.)  Bessen had adopted a uniform system under which "any teacher—male or female—who was offered a teaching position with the District was offered one step on the salary schedule for each prior year of teaching experience within the District, in the State of New York, or in their neighboring State of Vermont."  (*Id.* ¶ 88.)  This methodology was applied

to determine starting salaries for teachers who were hired during Bessen's time as superintendent.  (*Id.* ¶ 89.)

During their meeting, Bessen advised Birchmore that, because of her Master's degree, ten years of prior teaching experience in the State of Vermont, and one year of prior teaching experience within the District, she would be offered the position at MA Step 12.  (*Id.* ¶ 66.)  Birchmore negotiated "to obtain 43 additional salary credits for her education-related graduate courses that were above the credits that were included in her Master's degree in Education."  (*Id.* ¶ 67.)

In February 2015, the Board voted to offer Birchmore the technology education teacher position at MA Step 12, with an additional forty-three credit hours, for a total starting salary of $51,752, pro-rated for the remainder of the 2014-15 school year.  (*Id.* ¶ 68.)  Birchmore accepted the offer and, two weeks later, began working for the District.  (*Id.* ¶ 69.)

During the 2016-17 school year, Gary Gendron, a grades 9-12 technology teacher, notified the District of his intentions to retire at the end of the year.  (*Id.* ¶ 70.)  Gendron was hired by the District in 2007 at MA Step 15, with a starting salary of $49,631.  (*Id.* ¶ 137.)  At the time, he had a Bachelor's degree in Industrial Technology; a Master's degree in

Industrial Administration; a Master's degree in Applied Technology

Education; twenty-five years of experience in the private sector of

engineering; and had two years of teaching experience with the Boards of

Cooperative Educational Services (BOCES), where he received additional

compensation for being a mentor.  (*Id.* ¶¶ 123, 125, 126.)  Gendron had

been hired by BOCES at MA Step 10, and was earning $44,223.61 during

the 2005-06 school year.  (*Id.* ¶ 136.)

In May 2017, the District asked Birchmore to transfer into Gendron's

position upon his retirement, but she "flat out said no."  (*Id.* ¶¶ 71-72, 104.)

The District then "involuntarily transferred [Birchmore] into Gendron's

position for the 2017-18 school year and thereafter."  (*Id.* ¶ 73.)

### 3.    The Collective Bargaining Agreement

All of the District's "instructional employees" are subject to the terms

and conditions of its collective bargaining agreement (CBA) with the

Granville Teachers' Association (hereinafter "the Teachers' Union").  (*Id.*

¶ 9.)  "Each CBA contains a 'salary schedule' which establishes rates of

pay for members of the Teachers' Union . . . based on the 'step' that each

member is initially assigned when they are hired, and whether the member

has a Bachelor's degree or a Master's degree."  (*Id.* ¶ 10.)  The CBA

governs the initial placement of a teacher on the salary schedule, and

"[a]fter a member's initial step on the salary schedule is established, the

member advances one step on the schedule for each full school year of

teaching."  (*Id.* ¶¶ 11-12.)  For newly-hired teachers, the District must give

step credit on the salary schedule for prior teaching experience in the

District.  (*Id.* ¶ 13.)

### 4.   *Birchmore's Charge of Discrimination*

Birchmore filed a Charge of Discrimination (hereinafter "the Charge")

with the Equal Employment Opportunity Commission (EEOC), alleging that

the District "willfully" violated Title VII.  (*Id.* ¶¶ 78-79.)  She "did not allege,

claim or charge that she experienced a disparate impact from a facially

neutral employment practice."  (*Id.* ¶ 78.)

## B.   **Procedural History**

Birchmore filed her complaint on December 18, 2018, in which she

asserts the following claims against the District: (1) a violation of the EPA,

and (2) unlawful sex discrimination in violation of Title VII.  (Compl.

¶¶ 27-34.)  The District moves for summary judgment as to both claims.

(Dkt. No. 28.)

After Birchmore opposed the District's motion for summary judment,

8

(Dkt. No. 31), the District moved to strike portions of Birchmore's declaration that she submitted with her opposition papers, (Dkt. No. 34). Birchmore opposed the motion to strike, (Dkt. No. 36), and the District filed a letter motion requesting consideration of its reply in connection with its motion to strike, (Dkt. No. 37).

## V. __Standard of Review__

The standard of review under Fed. R. Civ. P. 56 is well settled and will not be repeated here. For a full discussion of the governing standard, the court refers the parties to its prior decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV. __Discussion__

### A. __EPA__

First, the District argues that Birchmore cannot make out a prima facie case of her EPA claim because she and Gendron did not perform substantially equal jobs, and the District did not pay a higher salary to Gendron. (Dkt. No. 28, Attach. 1 at 19.) Second, the District contends that it has a legitimate, non-discriminatory reason for any pay disparity between Birchmore and Gendron—namely, Gendron's education; prior teaching

9

experience; his twenty-five years of private sector experience in the fields of engineering and upper-level industrial management; the needs of the District at the time; the inferior qualifications of the only other qualified candidate for the position at the time; and the District's "need[] to meet his salary demands in order to induce him to accept the position."  (*Id.* at 19-25.)

In response, Birchmore contends that she "has shown that the District pays different wages to employees of different genders"; she was offered reduced compensation on the basis of her sex; and that she and Gendron "were paid different rates of compensation" for comparable jobs which required "equal skill, effort, and responsibility under similar working conditions."  (Dkt. No. 31 at 12-19.)  She maintains that, had she and Gendron been treated equally, she would have commenced employment on Step 25, with a starting salary of $63,322, because "her prior teaching experience would have put her on Step 12 and she should then have been advanced a further 13 steps, in accord with . . . Gendron, to reflect her other qualifications and extensive industry experience."  (*Id.* at 13.)  Lastly, she argues that the District's proffered reasons are "factually inaccurate or legally insufficient," and are mere pretext for sex discrimination.  (*Id.* at 16.)

For the following reasons, the court agrees with the District.

The EPA prohibits employers from discriminating "between employees on the basis of sex" in payment of wages "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). At the summary judgment stage, EPA claims are evaluated under a burden shifting test similar to the Title VII *McDonnell Douglas* test. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Hardial v. Emblemhealth, Inc.*, No. 14-CV-4968, 2016 WL 3693750, at *8 (E.D.N.Y. 2016). To satisfy her initial burden, the plaintiff must first establish a prima facie case of wage discrimination by demonstrating that: "(1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions." *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254-55 (2d Cir. 2014) (quoting *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir.1999)).

Once the plaintiff establishes her prima facie case, the burden shifts to the defendant to justify the wage disparity by proving that the disparity results from "(i) a seniority system; (ii) a merit system; (iii) a system which

11

measures earnings by quantity or quality of production; or (iv) a differential based on any other factor than sex." *Ryduchowski v. Port Auth. of N.Y. & N.J.*, 203 F.3d 135, 142 (2d Cir. 2000) (quoting 29 U.S.C. § 206(d)(1)). "[A]n employer bears the burden of proving that a bona fide business-related reason exists for using the gender-neutral factor that results in a wage differential in order to establish the factor-other-than-sex defense." *Aldrich v. Randolph Cent. Sch. Dist*., 963 F.2d 520, 526 (2d Cir. 1992). "In other words, 'the job classification system resulting in differential pay [must be] rooted in legitimate business-related differences in work responsibilities *and* qualifications'" for the particular positions at issue. *Corbett-Ward v. State of N.Y. Office of Alcoholism & Substance Abuse Servs*., No. 1:12-CV-1755, 2016 WL 1020845, at *3 (N.D.N.Y. Mar. 14, 2016) (quoting *Aldrich*, 963 F.2d at 525).

"[T]he plaintiff may counter the defendant's affirmative defense by offering evidence showing that the reasons sought to be proved are a pretext for sex discrimination." *Id.* (quoting *Aldrich*, 963 F.2d at 526). "The appropriate inquiry to determine if the factor put forward is a pretext, is whether the employer has used the factor reasonably in light of the employer's stated purpose as well as its other practices." *Id.* (internal

12

quotation marks, alteration, and citation omitted).

The District makes a host of arguments as to why Birchmore has failed to establish a prima facie case under the EPA. (Dkt. No. 28, Attach. 1 at 13-18.) Assuming, without deciding, that Birchmore has stated a prima facie case, her EPA claim nonetheless fails because she has failed to demonstrate that the District's legitimate, non-discriminatory reasons for the pay disparity was mere pretext for gender discrimination.

Here, the District has met its burden by putting forth evidence which, it argues, justified the hiring of Gendron at Step 15, and Birchmore at Step 12. (Dkt. No. 28, Attach. 1 at 19-25.) Gendron had a Bachelor's degree in Industrial Technology, a Master's degree in Applied Technology Education, and a Master's degree in Industrial Administration. (Def.'s SMF ¶ 123; Dkt. No. 28, Attach. 27 at 3.) He had two years of prior teaching experience with the BOCES, where he received additional compensation for serving as a mentor. (Def.'s SMF ¶ 125.) Gendron had twenty-five years of private sector work experience in the fields of engineering and upper-level industrial management. (*Id.* ¶ 126.) His educational credentials "far overshadowed" those of the only other applicant at the time. (*Id.* ¶¶ 119, 124.)

Further, at the time, the District was in the process of expanding its technology program and curriculum through a project called "Project Lead The Way," and the Superintendent at that time believed that Gendron's background would be of value.  (Dkt. No. 28, Attach. 24 at 4-5.)  Gendron also had a relatively long commute to the District, which he took into consideration when deciding whether to accept the District's offer.  (Def.'s SMF ¶¶ 127-29.)  All of these factors were taken into consideration by the District when offering Gendron the technology education position at MA Step 15 with a starting salary of $49,461.  (Dkt. No. 28, Attach. 1 at 19-23.)

In contrast, Birchmore was hired "after being rejected multiple times because she was [the District's] only option."  (*Id.* at 24.)  Her starting salary was determined by her Master's degree and eleven years of teaching experience, "which, under [Superintendent] Bessen's rubric . . . resulted in [Birchmore] being offered a position MA Step 12, with additional compensation for certain graduate credits."  (*Id.* at 24-25.)

The difference in the District's hiring of Gendron and Birchmore at their respective steps and starting salaries is supported by legitimate factors, other than sex.  *See Husser v. N.Y.C Dep't of Educ.*, 137 F. Supp. 3d 253, 269 (E.D.N.Y. 2015) ("[A]n employer may properly decide to pay

14

higher salaries to employees with greater experience, more advanced

educational degrees, or objectively better credentials than their co-workers.

(citations omitted)); *Osborn v. Home Depot U.S.A., Inc*., 518 F. Supp. 2d

377, 385 (D. Conn. 2007) (noting that "market forces, previous experience,

education, and inducement to hire the best person for the job have been

held to be legitimate factors justifying pay differentials under the EPA"

(citations omitted)); *Drury v. Waterfront Media, Inc.*, No. 05 Civ. 10646,

2007 WL 737486, at *4 (S.D.N.Y. Mar. 8, 2007) (granting the defendant's

motion for summary judgment as to an EPA claim, and finding that "[s]alary

matching and experience-based compensation are reasonable,

gender-neutral business tactics, and therefore qualify as 'a factor other

than sex.'" (citations omitted)).

　　None of Birchmore's arguments or purported factual disputes

regarding the circumstances surrounding her or Gendron's hiring are

sufficient for a rational jury to find that the District's legitimate, non-

discriminatory reasons for hiring Gendron and Birchmore at their respective

steps and starting salaries were a pretext for discrimination.  In evaluating

a plaintiff's argument that the defendant's explanation is pretext, the court

looks to "whether the employer has used the [justification] reasonably in

light of the employer's stated purpose as well as its other practices."

*Osborn*, 518 F. Supp. 2d at 386 (quoting *Aldrich*, 963 F.2d at 526).  Indeed,

there is nothing in the record to suggest that the District's actions can be

attributed to a discriminatory motive.

For instance, the record is devoid of any comments or actions by

anyone at the District indicating that he or she had a discriminatory animus

against female employees.  Nor is there evidence of discriminatory intent

with respect to events surrounding the hiring process and the pay disparity

between Birchmore and Gendron.  Rather, the hiring process, and

subsequent offers made to Gendron and Birchmore, were based on a

salary schedule, which took into account a teacher's education and prior

work experience.  Specifically, Bessen testified that, after becoming

superintendent, he adopted a uniform system wherein "[a]ll instructional

employees of the District . . . are subject to the terms and conditions of a

[CBA]," which "contains a 'salary schedule' which establishes rates of pay

for all employees who are subject to the CBA."  (Dkt. No. 28, Attach. 3

at 2.)  "Teachers are assigned to a 'step' on the salary schedule when they

are initially hired," and each step has "an associated salary for those

teachers who have a Bachelor's degree, and those teachers who have a

Master's degree." (*Id.*)  Once a teacher is placed on the salary schedule, the teacher advances one step for each prior year of teaching experience within the District. (*Id*. at 2-3.)  This methodology was applied to determine starting salaries for teachers who were hired during Bessen's time as superintendent. (*Id.*)

The District notes that Brayton, a male eighth-grade technology teacher whom Birchmore was hired to replace, was offered a lower starting salary than Birchmore. (Dkt. No. 28, Attach. 1 at 14-15.)  At the time of his hiring, Brayton had a Bachelor's degree and one year of teaching experience, and was offered, and accepted, a position at BA Step 2, with a salary of $33,464. (*Id.*)  The District contends that, "the same sex-neutral methodology was used to calculate their salaries, which resulted in [Birchmore] earning a higher salary than Brayton when they were hired," and thus, "it is axiomatic that [her] EPA claim must be dismissed." (*Id.* at 15.)

No reasonable trier of fact could determine that the District treated Birchmore differently on the basis of her gender, and, in the absence of any evidence by Birchmore to overcome the District's legitimate, non-discriminatory explanation for any pay disparity, no reasonable trier of fact

could find that the explanation is pretext for sex discrimination.

Accordingly, the District's motion for summary judgment as to Birchmore's EPA claim is granted, and the claim is dismissed.

## B.  **Title VII**

"The Equal Pay Act and Title VII must be construed in harmony, particularly where claims made under the two statutes arise out of the same discriminatory pay policies."  *Barrett v. Forest Labs., Inc*., 39 F. Supp. 3d 407, 451 (S.D.N.Y. 2014) (quoting *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 483 (2d Cir. 2001)).  "One key difference between them, of course, is that a Title VII disparate treatment claim requires a showing of discriminatory intent, while an Equal Pay Act claim does not."  *Id.* at 451-52 (internal quotation marks and citation omitted).

For the reasons explained above, even assuming Birchmore has raised a prima facie Title VII claim, because the District had a legitimate, non-discriminatory reason for any disparity between Gendron's and Birchmore's starting salaries, Birchmore's claim fails.  Accordingly, the District is entitled to summary judgment as to Birchmore's Title VII claim, and the claim is dismissed.

## V.  **Conclusion**

18

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the District's motion for summary judgment (Dkt. No. 28) is **GRANTED**; and it is further

**ORDERED** that the District's motion to strike (Dkt. No. 34) is **DENIED as moot**; and it is further

**ORDERED** that the District's motion requesting consideration of its reply memorandum of law (Dkt. No. 37) is **DENIED as moot**; and it is further

**ORDERED** that Birchmore's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 4, 2021
Albany, New York

Gary L. Sharpe
U.S. District Judge

19